DIANE J. HUMETEWA
United States Attorney
District of Arizona

JILL L. HIRNEISEN
Assistant U.S. Attorney
AZ State Bar 021822
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Facsimile: (602) 514-7760
E-Mail: jill.hirneisen@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Madrigal, et al,<br><br>Plaintiffs,<br><br>v.<br><br>Rafael N. Mendoza, M.D., et al,<br><br>Defendants. | CIV-06-2914-PHX-ROS<br><br>**DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

Defendant United States of America hereby moves summary judgment pursuant to Rule 56, Fed.R.Civ.P. The United States is entitled to summary judgment because Plaintiffs cannot prove the elements necessary to prevail on their medical malpractice claims. This Motion is supported by the following Memorandum of Points and Authorities, the separately submitted Statement of Facts and the exhibits attached thereto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   FACTS**

This is a medical malpractice case arising from the prenatal, labor and delivery care provided to Plaintiff Maria Elena Madrigal and her infant daughter, Plaintiff Melissa Madrigal. (Defendant United States' separate Statement of Facts, hereinafter "SOF" ¶ 1). Mrs. Madrigal received her prenatal care at Clinica Adelante, a federally supported clinic within the meaning of the Federally Supported Health Centers Assistance Act of 1992 (FSHCCA), as amended, 42 U.S.C. § 233(g)-(n). (SOF ¶ 2). Dr. Rafael Mendoza, Dr. Ajaz Rahaman, and Marcia Brickson,

1  a nurse practitioner, all provided prenatal care to Mrs. Madrigal at Clinica Adelante, and they
2  are deemed federal employees within the meaning of the FSHCCA. (SOF ¶ 2). Dr. Mendoza,
3  Dr. Rahaman and Ms. Brickson were all acting within the course and scope of their employment
4  with Clinica Adelante when they provided care to Mrs. Madrigal, and, accordingly, any claim
5  arising from the medical care provided by these providers is covered under the Federal Tort
6  Claims Act (FTCA). 28 U.S.C. §§ 1346(b) and 2671, *et seq.* Two non-federal providers, Del
7  Webb Hospital, where Maria Madrigal gave birth, and Dr. David Forest, the obstetrician who
8  performed the delivery, are also Co-Defendants.

9  Maria Madrigal's pregnancy with Melissa was her seventh pregnancy. (SOF ¶ 7). Mrs.
10 Madrigal had previously delivered seven healthy infants (one pregnancy produced twins) with
11 no labor and delivery complications. (SOF ¶ 7). The birth weights of the infants ranged from
12 5 pounds, 11 ounces to 9 pounds, four ounces. (SOF ¶ 7).

13 On November 26, 2002, when Mrs. Madrigal was at 36 weeks gestation, she had an
14 ultrasound study that estimated the baby's weight at 4,172 grams (9 pounds, 3 ounces). (SOF
15 ¶ 8). The providers at Clinica Adelante offered Mrs. Madrigal an early induction of labor at 37
16 weeks if she would consent to an amniocentesis study to confirm fetal lung maturity, or,
17 alternatively, Mrs. Madrigal was offered a planned induction of labor at 39 weeks. (SOF ¶ 7).
18 Mrs. Madrigal refused the amniocentesis study, and Dr. Mendoza ordered induction of labor at
19 39 weeks gestation. (SOF ¶ 7).

20 On December 10, 2002, Maria Madrigal was admitted to Del Webb Hospital at
21 approximately 4:25 a.m. (SOF ¶ 9). Dr. Mendoza's initial orders included prostaglandin gel to
22 assist with cervical ripening and induction of labor. (SOF ¶¶ 9 and 10). Mrs. Madrigal's labor
23 progressed throughout the day. At 12:30 p.m., Dr. Mendoza artificially ruptured Mrs.
24 Madrigal's membranes to further assist with the progress of labor. (SOF ¶11). Dr. Mendoza
25 went off duty sometime around 1:00 p.m., and Dr. Rahaman assumed care of Mrs. Madrigal until
26 sometime between 4:00 and 4:30 p.m., when Dr. Forest began night call for Clinica Adelante's
27 patients. (SOF ¶ 12). Dr. Rahaman has no independent recollection of Mrs. Madrigal, but the
28

1  nurses' notes from Del Webb Hospital reflect that he called to inquire about the patient's labor
2  progress and gave some additional telephone orders.  (SOF ¶ 12).[1]

3        Defendant Dr. David Forest, a non-federal provider who was taking call for Clinica
4  Adelante's patients, delivered Melissa Madrigal at 5:12p.m. on December 10, 2002. (SOF ¶¶ 3
5  and 4).  The delivery was complicated by the development of a shoulder dystocia.[2]  Dr. Forest
6  performed a series of maneuvers and was able to deliver the infant.  (SOF ¶ 4).  Melissa
7  Madrigal weighed 10 pounds, 10 ounces (4821 grams) at birth.  (SOF ¶ 4).

8        After delivery, Melissa exhibited no voluntary movement of her left arm.  She was
9  subsequently diagnosed with a brachial plexus injury.  Melissa currently has impaired function
10 of her left arm, which Plaintiffs have alleged is permanent.  (SOF ¶ 6).

11       Dr. Stephen Leviss is Plaintiffs' standard of care and causation expert.  His expert report
12 criticizes Dr. Mendoza for (1) failing to offer Maria Madrigal a cesarean section prior to
13 admission, based on the estimated fetal weight, and (2) for admitting her for induction of labor
14 on December 10, 2002, which he claims directly led to the shoulder dystocia and brachial plexus
15 injury (Erb's palsy).  (SOF ¶ 20).

16       Dr. Jeffrey Phelan is the United States' standard of care and causation expert.  In Dr.
17 Phelan's expert opinion, Dr. Mendoza's care and treatment met the standard of care.  Dr.
18 Mendoza had no obligation to offer Mrs. Madrigal a cesarean section, and induction of labor was
19 reasonable and was not contraindicated, which is consistent with the medical literature and
20 studies cited in Dr. Phelan's report.  (SOF ¶ 21).  Dr. Phelan  also opined that the permanent

---

[1] There were no labor problems during the afternoon, and it does not appear that Dr. Rahaman was at the hospital during that time period.  He believes he remained in the clinic's office across the street from the hospital, where he was seeing patients.  (SOF ¶ 12)

[2] The term "shoulder dystocia" refers to difficulty delivering one or both of an infant's shoulders after the head has been delivered.  The condition primarily occurs when the infant's anterior shoulder becomes wedged behind the mother's symphysis pubis (pelvic) bone. SOF ¶ 5).

3

brachial plexus injury was likely caused by Melissa Madrigal's position in utero and the rapid descent during labor. (SOF ¶ 21).

## II. LEGAL ARGUMENT

### A. Dr. Leviss' Opinions Are Not Admissible Under Rule 702, Fed.R.Evid.

Rule 702 allows an expert with specialized knowledge to testify if the expert's testimony will help the trier of fact understand the evidence. Rule 702 imposes a special obligation on the trial judge to "ensure that any and all scientific testimony... is not only relevant but reliable." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). The trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 593. This gatekeeping requirement ensures that the expert employs the same level of intellectual rigor in the courtroom that is practiced in the expert's relevant field. *Kumho Tire Co., Ltd. v. Carmichel*, 562 U.S. 137, 152 (1999). The party proffering the opinion testimony must come forward with objective, verifiable evidence that the testimony is based on "scientifically valid principles." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317-18 (9th Cir. 1995)(*Daubert II*). "One means of showing this is by proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication." *Id.* Dr. Leviss' opinions and conclusions do not stand up to scientific scrutiny.

Medical studies have demonstrated that shoulder dystocia and brachial plexus injuries are generally not predictable or preventable. (SOF ¶ 13). The use of planned or "prophylactic" cesarean delivery as a means of preventing shoulder dystocia and brachial plexus injury is not supported by the scientific data. (SOF ¶ 15). Accordingly, the American College of Obstetricians and Gynecologists (ACOG)[3] does not recommend that prophylactic cesarean delivery be

---

[3] The American College of Obstetricians and Gynecologists (ACOG) is the leading professional group for women's health care providers in the United States. (SOF ¶ 17). A
(continued...)

4

considered by an obstetrician unless the estimated fetal weight is greater than 5,000 grams.[4] (SOF ¶ 14). Melissa Madrigal's estimated fetal weight was never greater than 5,000 grams. On November 26, 2002, Melissa's estimated weight by ultrasound was 4,172 grams (SOF ¶ 8), and her actual birth weight on December 10, 2002, was 4,821 grams. (SOF ¶ 4). Melissa Madrigal's actual birth weight was lower than the threshold where cesarian section would even be considered for prophylactic reasons. Dr. Leviss' opinion that Dr. Mendoza breached the standard of care by failing to offer a cesarian section is contrary to ACOG's recommendations and the scientific data that supports those guidelines.

Scientific research has likewise demonstrated that induction of labor does not alter the incidence of shoulder dystocia in non-diabetic patients such as Maria Madrigal. (SOF ¶15). Induction of labor neither increases nor decreases the incidence of shoulder dystocia. (SOF ¶16). Accordingly, Dr. Leviss' opinions that induction of labor was contraindicated and that induction caused the shoulder dystocia and brachial plexus injury are entirely unsupported by scientific evidence.

During deposition, Dr. Leviss was asked a number of times about the medical literature produced during discovery that contradicts his opinions in this matter. Dr. Leviss "discounted" the peer-reviewed literature and studies, or he claimed they were "self-serving"... "anecdotal".... "not evidence based" or were "inapplicable." (SOF ¶ 19). However, he has not produced anything with a sound scientific basis to rebut the medical literature and Dr. Phelan's opinions in this matter.

Dr. Leviss' testimony is inadmissible under Rule 702 because his opinions are entirely without scientific support.

---

[3] (...continued)
primary part of ACOG's mission is to strongly advocate for quality health care for women and to maintain the highest standards of clinical practice for obstetricians. (SOF ¶ 17). ACOG publications are often cited as evidence of the standard of care. (SOF ¶ 18).

[4] This recommendation is for non-diabetic patients. Maria Madrigal is not diabetic.

5

### B. The United States Is Entitled to Summary Judgment Because Plaintiffs Do Not Have the Expert Testimony Needed to Prove the Elements of Their Medical Malpractice Claim.

Under the FTCA, the United States is liable for personal injury caused by the negligent or wrongful acts or omissions of a federal employee acting within the scope of employment. Any civil action based in tort against an employee of a deemed community health center shall be governed by the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b). Here, the conduct in question occurred in Arizona, and, therefore, Arizona substantive law provides the elements of Plaintiffs' claims. The elements of a claim for medical negligence are set forth in A.R.S. § 12-563:

> Both of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:
>
> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
>
> 2. Such failure was a proximate cause of the injury.

Both elements must generally be proven by expert medical testimony. *See, Barrett v. Harris*, 207 Ariz. 374, 378, 86 P.3d 954, 958 (App. 2004); *Gurr v. Willcutt*, 146 Ariz. 575, 582, 707 P.2d 979, 986 (App.1985). Here, Dr. Leviss' expert opinions on both standard of care and causation are inadmissible under Rule 702, as set forth above. Accordingly, Plaintiffs do not have the expert testimony that is necessary to prove either element of their medical malpractice claim, and the United States is entitled to summary judgment

### III. CONCLUSION

Based on the foregoing, Defendant United States of America respectfully requests that the Court grant summary judgment in its favor.

. . .

. . .

Respectfully submitted this 13th day of February, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

s/Jill L. Hirneisen

JILL L. HIRNEISEN
Assistant U.S. Attorney

## **CERTIFICATION**

I hereby certify that on February 13, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J Tyrrell Taber
Taber Law Firm, P.C.
2394 E. Camelback, Suite 150
Phoenix, Arizona 85016

Neil C. Alden
Jardine Baker Hickman Houston
3300 N. Central Ave., Suite 2600
Phoenix, Arizona 85012

Jill Covington
Fennemore Craig, P.C.
3003 N. Central, Suite 2600
Phoenix, Arizona 85012

s/Jill L. Hirneisen

7